UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-21171-CV-UNGARO
MAGISTRATE JUDGE REID

WHITESOURCE SOFTWARE, INC.,

    Plaintiff,

v.

MICHAEL COSCINA,

    Defendant.
_____/

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

### I. Introduction

This matter is before the Court on Plaintiff WhiteSource Software, Inc.'s ("WhiteSource") *ex parte* Motion for Temporary Restraining Order ("TRO") filed pursuant to Fed. R. Civ. P. 65(b). [ECF No. 5]. WhiteSource also filed a Supplement in support of the Motion for purposes of satisfying Fed. R. Civ. P. 65(b)(1)(B). [ECF No. 11]. This cause has been referred to the Undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). [ECF No. 8].

WhiteSource brings the Motion on an emergency and *ex parte* basis. [ECF No. 11]. WhiteSource alleges that Defendant Michael Coscina ("Coscina") stole confidential information and breached the confidentiality and non-disclosure provisions of his employment agreement with the company. [ECF No. 5].

Specifically, WhiteSource claims that Coscina has posted disparaging statements about the company and at least ten of its employees on the internet, posted confidential information about the company on the internet, and refuses to return his company-issued laptop. [*Id*. at 1]. WhiteSource also alleges that, despite Coscina's termination from WhiteSource, he still has

possession of the company's confidential and trade secret information and has expressed an intent to continue to access this information without authority and use the information to harm the company's business interests. [*Id*. at 1-2].

WhiteSource seeks a TRO (1) enjoining Coscina from using or disclosing WhiteSource's confidential information and trade secrets; (2) enjoining Coscina from disclosing or soliciting WhiteSource's clients and prospective clients; and (3) requiring Coscina to return all correspondence, files, and tangible and/or intangible assets and other WhiteSource property, including any copies. [*Id*.].

Upon review of the Motion and the record in this case, the Undersigned **RECOMMENDS** that the Motion be **GRANTED**. Defendant Michael Coscina should be **ENJOINED** from: (1) using or disclosing WhiteSource's confidential information and trade secrets; and (2) disclosing or soliciting WhiteSource's clients and prospective clients. In addition, Defendant Michael Coscina should **RETURN** all correspondence, files, and tangible and/or intangible assets and other WhiteSource property to WhiteSource upon receipt of the TRO, if this Report is adopted by the Court and a TRO is issued. The Undersigned's findings of fact and conclusions of law in support are set forth below.

## II.   Discussion

A.   <u>Standard of Review</u>

In order to obtain a TRO, WhiteSource must demonstrate: "(1) [there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005) (*per curiam*).

When a motion for a TRO is sought *ex parte*, meaning without notice to the adverse party, the Court may only issue the TRO if: "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

Because of the extraordinary nature of such orders, "[e]x parte temporary restraining orders 'should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing and no longer.'" *Gucci Am., Inc. v. BGAADB*, Case No. 18-cv-62227-UU, 2018 U.S. Dist. LEXIS 222673, at *5, 2018 WL 6261548, at *2 (S.D. Fla. Sept. 20, 2018) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Granny Goose Foods, Inc.*, 415 U.S. 423, 439 (1974)).

B.   Analysis

WhiteSource has met its burden and is entitled to a TRO because the Verified Complaint and Motion establish: "(1) [there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo*, 403 F.3d at 1225-26.

The allegations contained within the Verified Complaint support the issuance of a TRO because they show that immediate and irreparable injury, loss, or damage will result to WhiteSource before Coscina can be heard in opposition to the Motion. *See* Fed. R. Civ. P. 65(b)(1)(A). Relatedly, with respect to Fed. R. Civ. P. 65(b)(1)(B), counsel for WhiteSource has filed documentation in support of the Motion that indicates that Coscina has been made aware of this action and the Motion, has left his home residence, and is likely evading service. [ECF No.

11]. As such, the Undersigned has ascertained that it would be futile for the Court to insist on further additional notice to him in the hopes that he would seek to be heard in opposition to the Motion, and a TRO is necessary to preserve the status quo and protect WhiteSource from further harm. *See Carroll v. President and Comm'rs of Princess Anne*, 393 U.S. 175, 180 (1968).

Looking now to the Motion and the first requirement under *Schiavo*, the likelihood of WhiteSource's success on the merits of its claims, the Undersigned concludes that WhiteSource has a very strong possibility of proving at trial that Coscina violated the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 (Count 1); violated the Florida Computer Abuse and Data Recovery Act ("CADRA"), Fla. Stat. § 668.801 (Count 2); or breached his employment agreement with WhiteSource (Counts 3, 4, and 5).

With respect to the CFAA claim in Count 1, WhiteSource is required to prove that Coscina intentionally accessed a computer either without authorization or exceeded company authorization, and that in doing so, he obtained information from that computer. *See* 18 U.S.C. § 1030(a)(2)(C). The sworn allegations in the Verified Complaint indicate that Coscina remained in possession of and intended to access his company-issued laptop after his employment was terminated with the company. [ECF No. 1 at 14-15]. Additionally, it reveals that during his time with the company, he exceeded his authorization when he made copies of WhiteSource's confidential and trade secret information for non-employment related purposes. [*Id*. at 13]. WhiteSource alleges that as a result of these actions, it has incurred losses in excess of $5,000, which satisfies the requirements of § 1030(c)(4)(A)(i)(I) to bring a civil action pursuant to § 1030(g). [*Id*. at 15]. As such, the Undersigned concludes that it appears that WhiteSource is likely to succeed on the merits of this claim[1] if it were to proceed to trial.

---

[1] WhiteSource's claims under Florida statute and Florida common law are equally strong and supported by the Verified Complaint. However, because these state law claims are pending pursuant to the Court's supplemental jurisdiction,

Second, WhiteSource's Verified Complaint and Motion establish that it will suffer irreparable injury if a TRO is not granted. Under Florida law, there is a presumption of irreparable harm in cases involving alleged violations of employment agreement provisions regarding confidentiality and trade secrets, and as well as alleging interference with business customers. *See* Fla. Stat. § 542.33(2)(a) ("use of specific trade secrets, customer lists, or direct solicitation of existing customers shall be presumed to be an irreparable injury and may be specifically enjoined"). Here, the sworn facts contained within the Verified Complaint more than show irreparable harm to WhiteSource. In short, Coscina is in possession of a company-issued laptop containing confidential and trade secret information and has repeatedly posted confidential information on the internet and social media. [ECF No. 1 at 9-13]. If that is not enough, he even tagged certain posts "@WhiteSource" to further the dissemination of his posts. [*Id*.]. Allowing Coscina to continue to reveal WhiteSource's confidential and trade secret information is the very definition of irreparable harm, because once such information is on the internet, it is nearly impossible to remove. Accordingly, WhiteSource has met its burden on the second requirement to receive a TRO.

Next, the threatened injury to WhiteSource outweighs the harm the TRO would inflict on Coscina. While the revelation of WhiteSource's confidential information and trade secrets would significantly harm WhiteSource, all the recommended TRO would do is require Coscina to temporarily abide by the provisions he already agreed to in his employment agreement while the TRO is in place and to return any WhiteSource property. Coscina would not be harmed because

---

and the CFAA claim alone is sufficient to establish that the likelihood of success on the merits factor weighs in favor of granting a TRO, the Undersigned need not address these counts. *See Butler v. Ala. Jud. Inquiry Comm'n*, 111 F. Supp. 2d 1224, 1230 (citing *Atlanta Sch. Of Kayaking, Inc. v. Douglasville-Douglas Cnty. Water and Sewer Auth.*, 695 F.2d 536, 539 (11th Cir. 1983) ("The Court need not conclude that plaintiffs have carried their burden of proof on any single claim or on all claims, only that the proof supports a substantial likelihood of success on at least one claim or theory which in turn would support a preliminary injunction.")).

he has no legal right to possess WhiteSource's property now that he is no longer employed by the company, and he agreed not to reveal WhiteSource's confidential information and trade secrets in his employment agreement. Thus, the third requirement is met.

Finally, the entry of a TRO would further the public interest "by preserving faith in the contractual agreements that businesses routinely make with their employees, by upholding the terms of enforceable contracts, and by rightfully protecting trade secrets from unlawful use and disclosure." *Int'l Hair & Beauty Sys., LLC v. Simply Organic, Inc.*, Case No: 8:11-cv-1883-30AEP, 2011 U.S. Dist. LEXIS 127336, 2011 WL 5359264, at *9 (M.D. Fla. Sept. 26, 2011). Accordingly, this final requirement also weighs in favor of the issuance of a TRO.

C.   WhiteSource's Requested Relief

In the Motion, WhiteSource seeks a TRO that: (1) enjoins Coscina from using or disclosing any of its confidential information or trade secrets; (2) requires him to return all correspondence, files, and tangible and/or intangible assets and other WhiteSource property to WhiteSource; and (3) enjoins him from disclosing or soliciting WhiteSource's clients and prospective clients.

The suggested prohibitions on disclosure of confidential information or trade secrets and on solicitation of current and prospective clients generally tracks the language and spirit of the parties' employment agreement [ECF No. 1-1] and is sufficiently specific enough to be understood and followed. *See* Fed. R. Civ. P. 65(d)(1). As for the requirement that Coscina return all WhiteSource property, this provision is also sufficiently specific and detailed to be understood and followed. *See id.* Thus, because WhiteSource has met its burden to show that a TRO should be granted, and because the requested relief is proper and sufficiently detailed, the Motion should be granted in its entirety.

### III.     Recommendations

Based on the above, it is **RECOMMENDED** that Plaintiff's *ex parte* Motion for Temporary Restraining Order [ECF No. 5] be **GRANTED**, and that Defendant Michael Coscina should be **ENJOINED** from: (1) using or disclosing WhiteSource's confidential information and trade secrets; and (2) disclosing or soliciting WhiteSource's clients and prospective clients. It is further **RECOMMENDED** that Defendant Michael Coscina should **RETURN** all correspondence, files, and tangible and/or intangible assets and other WhiteSource property to WhiteSource upon receipt of the TRO, if this Report is adopted by the Court and a TRO is issued.

Objections to this Report may be filed with the District Judge within fourteen days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020) (quoting 11th Cir. R. 3-1 (2016)); *see also* 28 U.S.C. § 636(b)(1)(C).

**SIGNED** this 2nd day of April, 2021.

UNITED STATES MAGISTRATE JUDGE

cc:    **U.S. District Judge Ursula Ungaro;**

**All Counsel of Record via CM/ECF;** and

**Michael Coscina**
1865 79th St. Causeway, Ph L
North Bay Village, FL 33141
*PRO SE*